# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lashawn Harris, | Civil No. 14-248 (DWF/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Replacement Reserves, LLC, d/b/a Augustana Care Corporation, | |
| Defendant. | |

Eric D. Satre, Esq., Satre Law Firm, counsel for Plaintiff.

Daniel Robert Moses Haller, Esq., Penelope J. Phillips, Esq., and Randi J. Winter, Esq., Felhaber Larson, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendant Replacement Reserves, LLC, d/b/a Augustana Residential Care ("Augustana"). (Doc. No. 21.) For the reasons set forth below, the Court grants Augustana's motion.

## BACKGROUND

Plaintiff Lashawn Harris ("Harris") was hired by Augustana as a home health aide for its assisted living apartments in September 2011. (Doc. No. 35 ("Harris Dep.") at 13-14.) In her position as a home health aide, Harris's job duties included assisting residents with showers, dressing, and medications, and accompanying residents to meals.

(*Id.* at 16.) Harris reported to Lisa Rasmussen ("Rasmussen"), a Human Resources representative, and Cynthia Ashley ("Ashley"), the Director of Nursing. (*Id.* at 14-15.)

Harris initially worked from 3:00 p.m. to 11:00 p.m., but later in her employment, she worked the overnight shift from 7:30 p.m. to 6:30 a.m. (*Id.* at 15.) On the overnight shift, Harris worked as the sole employee in the assisted living apartments. (*Id.*) Harris worked between seventy and seventy-seven hours per two-week pay period and picked up additional shifts when available. (*Id.*)

Augustana asserts that it issued a verbal warning to Harris in February 2013 after receiving complaints from residents regarding her poor response time and her verbal conduct and name calling. (Doc. No. 24 ("Augustana Index of Trs. & Exs.") at 2, Attach. 6 ("Confirmation of Verbal Warning").) Harris disputes that she was ever given a verbal warning in February 2013. (Harris Dep. at 34.) On June 13, 2013, Harris received and signed a written warning based on residents' reports of Harris using "verbal uncaring statements about them." (Augustana Index of Trs. & Exs. at 2, Attach. 7 ("Written Warning").)

Augustana asserts that on August 7, 2013, it received a complaint from a resident, A.F., regarding a July 21, 2013 incident in which Harris allegedly pushed A.F. onto her bed, leaving bruise marks on her legs. (Doc. No. 31 ("Ashley Dep.") at 9-11.) Harris disputes this assertion and claims that she merely assisted A.F. in returning to her bed, but did not push or otherwise physically assault A.F. (Harris Dep. at 32-33, 42.) Harris further asserts that A.F. had problems getting in and out of bed, which was unusual, and that she reported these problems to the nurse and to the home health aide who relieved

Harris of duty that morning. (*Id.* at 33-35.) Following Harris's shift, the nurse on duty called an ambulance and A.F. was transported to a hospital. (*Id.* at 35.)

At approximately 5:00 p.m. on August 7, 2013, Augustana reported A.F.'s allegation to the local Minnesota Department of Health Common Entry Point ("CEP"), which is the county unit responsible for receiving reports of suspected maltreatment of vulnerable adults. (Ashley Dep. at 16.) Augustana asserts that, later that evening, Ashley called Harris to notify Harris that she was suspended during the pendency of Augustana's investigation into A.F.'s allegation and that Ashley and a Human Resources representative would want to speak with Harris in the next day or two. (*See* Augustana Index of Trs. & Exs. at 2, Attach. 11 ("Ashley Letter to Dep't of Health Admin.") at 2; *id.*, Attach. 9 ("Ashley E-Mail") at 2.) Harris asserts that Ashley called her to notify her that she would be suspended during the investigation and that Ashley would get back to her, but did not specify that she would call the next day. (Harris Dep. at 38, 40.)

The next morning, Augustana began its investigation into A.F.'s allegation. (Ashley Dep. at 19.) First, Ashley and Tammy Federer ("Federer"), a nursing home social worker, interviewed Samantha Schafer ("Schafer"), the nursing home social worker who received A.F.'s original complaint. (Ashley Letter to Dep't of Health Admin. at 2; Ashley E-Mail at 1.) Augustana asserts that during the interview, Schafer stated to Ashley and Federer that A.F. told her the night before that Harris had shoved her onto the bed and had left bruises on her upper thighs and had showed Schafer her bruises. (Ashley Letter to Dep't of Health Admin. at 2.) Next, Ashley and Sarah Clough ("Clough"), Assistant Director, spoke with A.F. regarding her allegation. (*Id.*; Ashley

3

E-Mail at 1; Ashley Dep. at 10-11.) Augustana asserts that A.F.'s statements were consistent with Schafer's recollection of events. (Ashley Letter to Dep't of Health Admin. at 2; Ashley Dep. at 10-11.) Finally, Augustana asserts that Ashley and April Hitchcock ("Hitchcock"), Human Resources Director, attempted to contact Harris by phone to schedule an investigative interview with her, but she never returned their calls or voicemails. (Ashley Dep. at 19-20; Augustana Index of Trs. & Exs. at 1, Attach. 3 ("Hitchcock Dep.") at 5-6; Ashley Letter to Dep't of Health Admin. at 3.) Harris asserts that she does not recall receiving their phone calls and that she did not speak directly with anyone at Augustana until August 11, 2013, when she returned Ashley's phone call and told her that she would meet with her the following morning. (Harris Dep. at 40-41.)

On August 12, 2013, Harris met with Ashley and Hitchcock to discuss A.F.'s allegations. (*Id.* at 42; Hitchcock Dep. at 8; Ashley Letter to Dep't of Health Admin. at 3.) During the meeting, Harris denied the allegations. (Harris Dep. at 42; Ashley Letter to Dep't of Health Admin. at 3.) At the conclusion of the meeting, Harris was terminated from her employment with Augustana and was given a copy of a termination form, which she refused to sign. (Harris Dep. at 42; Ashley Letter to Dep't of Health Admin. at 3; Doc. No. 29 at 4 ("Termination Form").) Augustana asserts that "[t]he termination decision was made based on the interviews that had taken place in the investigation, as well as Harris's history of previous corrective actions for inappropriate interactions with residents." (Doc. No. 23 at 9.) Harris maintains that the reason she was

4

given for her termination was the false allegation that she had pushed A.F. during her overnight shift on July 21, 2013. (Harris Dep. at 31.)

Harris asserts that following her termination, one of her co-workers, Lenora, told her that A.F. recanted her original report in the presence of another aide, Denise. (*Id.* at 54-55.) After learning that A.F. had allegedly recanted her report, Ashley, Clough, and two other social workers re-interviewed A.F. in A.F.'s apartment. (Ashley Dep. at 10-13; Hitchcock Dep. at 7, 9.) Augustana asserts that because A.F. reaffirmed her original report of abuse, physically demonstrated how the incident occurred, and presented documentation of the event during the follow-up interview, Augustana did not take any follow-up action on its decision to terminate Harris from employment. (*See* Doc. No. 23 at 12; Ashley Dep. at 13; Hitchcock Dep. at 9.)

Harris now works part-time as a home health aide for Home Healthcare, Inc., and is seeking additional employment. (Harris Dep. at 4-5.) Harris has specified "physical abuse" as the reason for leaving her job with Augustana on employment applications. (*Id.* at 50, 52-53.) Harris claims that Augustana scandalized her name by making a false statement when it specified "physical aggression towards resident" as the reason of termination on her termination form, and that she has had to report that statement on her subsequent job applications. (*Id.* at 53.)

On August 19, 2013, Harris filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Augustana, alleging that she was discriminated against on the basis of race. (*Id.* at 44-46, 49.)

On December 23, 2013, Harris commenced this lawsuit against Augustana in state court. (Doc. No. 1 ("Notice of Removal") ¶ 2, Ex. 2 ("Compl.").) In her Complaint, Harris asserts the following claims against Augustana: (I) Violation of Federal Fair Labor Standards Act; (II) Racial and National Original Discrimination in Violation of the Minnesota Human Rights Act and 42 U.S.C. § 1981; and (III) Defamation. (Compl. ¶¶ 18-39.) On January 24, 2014, Augustana filed a Notice of Removal to federal court. (Notice of Removal at 1-3.)

On April 7, 2014, the parties filed a Stipulation of Partial Dismissal with Prejudice as to Count I. (Doc. No. 6.) On April 8, 2014, the Court dismissed Count I with prejudice. (Doc. No. 7.) On April 14, 2015, the parties filed a Stipulation for Partial Dismissal as to Count II. (Doc. No. 16.) On April 21, 2015, the Court dismissed Count II with prejudice. (Doc. No. 17.)

Augustana now moves for summary judgment on Count III. (*See* Doc. No. 21.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   Defendant's Motion for Summary Judgment on Count III

Defendant moves for summary judgment on Count III of Plaintiff's Complaint, which alleges a defamation claim. To prove defamation, Plaintiff must establish that the allegedly defamatory statement: "(1) was communicated to someone other than the plaintiff, (2) was false, and (3) tended to harm the plaintiff's reputation and lower [the plaintiff] in the estimation of the community." *Chambers v. Travelers Cos.*, 668 F.3d 559, 564 (8th Cir. 2012) (citing *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009)). If the defamation affects a plaintiff in her business, trade, or profession, it is defamation per se and is actionable without proof of actual damages. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980).

Under Minnesota law, however, even if Plaintiff establishes each element of her defamation claim, Defendant may be protected by a qualified privilege. *Lewis v.*

*Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn. 1986). The determination of whether qualified privilege exists is a matter of law. *Id*. For a privilege to apply, the allegedly defamatory statements "must be made in good faith and must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *McClure v. Am. Fam. Mutual Ins.*, 223 F.3d 845, 854 (8th Cir. 2000) (quoting *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997)). Such qualified statements include, for example: (1) "[c]ommunications between an employer's agents made in the course of investigating or punishing an employee for misconduct"; (2) "communications made to an employee concerning the reasons for his or her discharge"; and (3) "communication to employees about the reasons for another employee's discharge." *Ewald v. Wal-Mart Stores, Inc.*, 139 F.3d 619, 623 (8th Cir. 1998) (internal citations omitted). An employer lacks probable or reasonable grounds for making a defamatory statement if that employer "takes no steps to investigate" and instead relies entirely on other potentially biased employees' statements or hearsay from unidentified sources. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn. 1990).

"A qualified privilege can be withdrawn if a plaintiff can show that defamatory statements were made with actual malice." *McClure*, 223 F.3d at 854 (citing *Bol*, 561 N.W.2d at 150).) Malice, which is defined as "actual ill-will or a design causelessly and wantonly to injure plaintiff," can be proven either by extrinsic evidence or intrinsic evidence, and on summary judgment is reviewed to determine whether the evidence submitted raises a genuine issue of material fact. *See id.*

Defendant argues that it is entitled to summary judgment on Plaintiff's defamation claim. (*See* Doc. No. 37 at 5.) First, Defendant argues that "statutory immunity applied to Augustana's statements." (*Id.*) Specifically, Defendant asserts that "Minnesota Statute § 626.557—which requires care facilities such as Augustana to report, investigate, and act on allegations of harm—explicitly grants immunity for facilities fulfilling their obligations to protect vulnerable adults." (*Id.*) Defendant further asserts that "[i]n her Opposition Memorandum, Harris does not challenge that Augustana's report to the [CEP], subsequent investigation, and conclusions drawn—including the termination decision—are protected by the statutory immunity." (*Id.* at 6.)

In addition, Defendant argues that "Harris has failed to show that a genuine issue of material fact exists from which a reasonable jury could find she was compelled to publish a false statement communicated to her by Augustana, or that it would have been foreseeable to Augustana that she would be compelled to self-publish." (*Id.* at 7.) Specifically, Defendant asserts that: (1) "Harris does not provide any evidence establishing that she has previously self-published a false statement Augustana communicated to her"; (2) "Harris fails to proffer any evidence she was *compelled* to communicate such a defamatory statement to a third party," and in fact, "Harris admitted she only disclosed 'physical abuse' as the reason for her termination on (allegedly) two out of over a dozen employment applications because her own attorney directed her to do so"; and (3) "Harris's newly asserted speculation that a future potential employer may ask the reason for her termination is unavailing" because "Minnesota courts have expressly rejected speculation regarding the possibility of future self-publication as a

basis for a defamation claim." (*Id.* at 6-7 (emphasis in original).) As such, Defendant contends that "[b]ecause these arguments are dispositive, the Court should grant summary judgment and dismiss Harris's claim." (*Id.* at 5.)

Plaintiff, on the other hand, argues that the Court should deny Defendant's motion as to her defamation claim. (*See* Doc. No. 27.) First, Plaintiff argues that the statements made by Defendant were defamatory because "assaulting a resident w[as] not the real reason[] for [Harris's] termination" and "[b]oth Ashley and Hitchcock now claim that the real reason for the termination was *the allegation* and not actual abuse or physical altercation." (*Id.* at 11-12 (emphasis in original).) Second, Plaintiff argues that the defamatory statements were published internally because: (1) "Director of Nursing, Cynthia Ashley, told the Home Health Aids that Harris assaulted a resident"; (2) "Augustana Care Corporation Employee Information Form 113 . . . lists Plaintiff's Reason for termination as: 'physical aggression towards resident'"; and (3) "Ashley wrote on Plaintiff's termination form #530 that Harris was being discharged for: "**Policy/procedure violated**: Physical aggression towards resident during a scheduled aid[e] visit on [July 21, 2013]." (*Id.* at 12 (emphasis in original).) Third, Plaintiff argues that "Defendant has failed in its burden to show reasonable or probable grounds" for qualified immunity to apply to Defendant's statements. (*Id.* at 13.) Specifically, Plaintiff asserts that "[Augustana] did very little to investigate whether Harris had physically assaulted the resident." (*Id.* at 14.) Finally, Plaintiff contends that "[e]ven if there was a privilege, it was abused by exaggerated language" because "[i]n this case there is abuse when both Ashley and Hitchcock now claim that the real reason for the termination was

*the allegation* and not actual abuse or physical altercation yet knowing that they still publish the physical altercation and patient abuse as the reason for the termination." (*Id.* at 16.) Therefore, Plaintiff argues that Defendant's motion should be denied. (*Id.* at 17.)

The Court concludes that Defendant is entitled to summary judgment on Count III. Even viewing the facts in the light most favorable to Plaintiff, and even assuming that Plaintiff has satisfied all elements of her defamation claim, the Court finds that Defendant's allegedly defamatory statements are entitled to a qualified privilege. *See Ewald*, 139 F.3d at 623. First, with respect to Ashley's allegedly defamatory statement to another Augustana employee, the Court finds that the statement was privileged because informing employees about the reason of another employee's termination falls under the qualified privilege to defamation. *See id.*; *Wirig*, 461 N.W.2d at 380. Second, with respect to Augustana's allegedly defamatory internal documentation describing Harris's termination, the Court similarly finds that those statements fall under the qualified privilege to defamation because they were made on the basis of a reasonable investigation into reported employee misconduct and were made only to explain the reason for Harris's discharge. *See Ewald*, 139 F.3d at 623; *Harvet v. Unity Med. Ctr.*, 428 N.W.2d 574, 579 (Minn. Ct. App. 1988).

Although Plaintiff argues that "Defendant has failed in its burden to show reasonable or probable grounds" to support a finding of qualified privilege, the Court finds that the cases relied on by Plaintiff are inapposite because Augustana did in fact take steps to investigate A.F.'s complaint to see if it could be substantiated prior to making the allegedly defamatory statements. *Cf. Wirig*, 461 N.W.2d at 380 (finding no

reasonable basis for accusing plaintiff of theft where "no investigation occurred to substantiate the charges that [plaintiff] had stolen merchandise"). In addition, the Court finds that Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to the sufficiency of the investigation. *See Desmonde v. Nystrom & Assocs., Ltd.*, No. 09-0221, 2009 WL 2596059, at *5 (Minn. Ct. App. Aug. 25, 2009) (finding investigation reasonable despite employer's failure to interview relevant employees). The Court finds that any outstanding factual disputes, such as whether Hitchcock and Ashley called Harris and left her messages on August 8 and 9, 2013, are not material because no reasonable juror could find that the flaws identified by Plaintiff in the investigation deprived Augustana of a reasonable basis for making the allegedly defamatory statements. Because the record establishes that Augustana's investigation was sufficiently thorough and provided "reasonable or probable grounds" for the statements, the Court finds that Augustana was qualifiedly privileged to communicate the reason for Harris's termination. *See McClure*, 223 F.3d at 854.

Moreover, the Court finds that Plaintiff has failed to present evidence of actual malice to defeat Defendant's qualified immunity. *See Ewald*, 139 F.3d at 623; *Lewis*, 389 N.W.2d at 890. The Court finds that the evidence shows that Augustana double-checked the details of the statements made by A.F. and its employees, and that the allegedly defamatory statements were based on a reasonable belief that Harris had been involved in the July 21, 2013 incident. In addition, the Court finds that Plaintiff has failed to offer evidence that would allow a reasonable juror to find that the involved Augustana employees had any grudge or bias against her to support a finding that

Defendant acted with actual malice in making the allegedly defamatory statements. *See Ewald*, 139 F.3d at 623. Furthermore, the Court finds that the statements themselves "were not so intemperate as to present a genuine issue of material fact as to whether [Augustana] 'causelessly or wantonly' attempted to injure [Harris's] reputation[] or sufficient to show a motive of actual ill-will." *McClure*, 223 F.3d at 854. Therefore, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's defamation claim.

## ORDER

Based on the foregoing, and the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Doc. No. [21]) is **GRANTED**.

2. Count III of Plaintiff's Complaint (Doc. No. [1-2]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 18, 2015          s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge